Plaintiff-appellant Jerry Dunn appeals the judgment and order of the Common Pleas Court of Marion County dismissing his appeal from the industrial commission for lack of jurisdiction, and asserts one assignment of error with the court's decision.
On September 11, 1989, during the course of appellant's employment with defendant-appellee the Eaton Corporation, an 8-inch heated steel "billet" ejected from a furnace and struck him in the forehead. Appellant sustained a fractured skull, fractured right knee, and burns to his left ear and the left side of his neck. Appellant was off work for nearly six months, and on December 18, 1990 filed a claim for permanent partial disability benefits. On March 17, 1992, the Bureau of Worker's Compensation issued a tentative order finding that appellant had a 0% permanent partial disability. Two days later, appellant filed an objection to the tentative order, and on June 2, 1992, a district hearing officer found that appellant had a 5% permanent partial disability. In August, 1992, appellant filed a request for allowance of certain additional conditions, and on October 8, 1993, a district hearing officer found additional allowances for "diminished left ear; decreased peripheral vision left; post-traumatic stress disorder; post concussion syndrome."
On November 13, 1997, appellant filed a request for compensation "for loss of 40% vision of his left eye." Appellant supported his request with reports from two different doctors, which confirm that appellant's work injury had most likely caused him to suffer a substantial loss of the peripheral visual field of his left eye. However, on February 17, 1998, an Industrial Commission hearing officer denied appellant's request, on the basis that appellant "has not sustained a 40 percent loss of vision of the left eye. Claimant derives the 40% figure from the percentage loss of the visualfield." The hearing officer went on to observe that the AMA Guides to the Evaluation of Permanent Impairment describe "vision" as being made up of three facets, visual field being only one of the three, and concluded that "[t]here is no case law, statute, or rule that supports claimant's contention that a loss of visual field directly correlates to loss of vision."
Appellant filed an administrative appeal of the hearing officer's decision, but on March 17, 1997, that decision was affirmed. The appeal officer observed that the medical reports provided by appellant "do not precisely set forth the loss of uncorrected vision the claimant may have suffered" from his workplace injury, and specifically noted that appellant had failed to provide any information that equated loss of visual field to a specific percentage of loss of uncorrected vision.
Appellant then filed a second appeal of the decision, which was denied in accordance with R.C. 4123.511(E). However, on May 20, 1998 appellant filed a complaint and appeal of the Industrial Commission's decision in the Court of Common Pleas of Marion County, alleging that the Commission's decision was "a final order denying him the right to participate in the Worker's Compensation Fund." On July 15, 1998, appellee Eaton Corp. filed a motion to dismiss appellant's complaint. Appellee's motion to dismiss argued that the Commission's denial of benefits was a decision as to the extent of appellant's disability, rather than a denial of his right to participate in the Fund, and was thus not subject to appeal before a common pleas court pursuant to R.C. 4123.512. On October 13, 1998, the trial court granted appellee's motion to dismiss. Appellant asserts a single assignment of error with the trial court's judgment.
 The trial court erred to the prejudice of Plaintiff when it granted the Defendant's motion to dismiss and held that the Plaintiff's appeal from an order [of] the Industrial Commission denying Plaintiff's request for vision benefits was an order that went to extent of disability and not the right to participate.
Appellant's right to appeal to the court of common pleas is governed by R.C. 4123.512, which reads in relevant part:
 The claimant or the employer may appeal an order of the industrial commission made under division (E) of section 4123.511 [4123.51.1] of the Revised Code in any injury or occupational disease case, other than a decision as to the extent of disability to the court of common pleas of the county in which the injury was inflicted or in which the contract of employment was made if the injury occurred outside the state, or in which the contract of employment was made if the exposure occurred outside the state. (Emphasis added.)
The parties agree that R.C. 4123.512 permits an appeal to the court of common pleas from Industrial Commission orders that resolve a question as to an employee's a right to participate or to continue to participate in the Worker's Compensation Fund, but does not permit appeal of the Commission's decisions as to extent of injury. See, e.g. Felty v. ATT Technologies,Inc. (1992), 65 Ohio St.3d 234, first paragraph of the syllabus.
The record reveals that defendant had already been granted the right to participate in the system for "decreased peripheral vision left." However, appellant argues that the Commission's order denying his request for benefits for "loss of uncorrected vision" pursuant to R.C. 4123.57(B) had the effect of "revoking" the previous orders that recognized loss of peripheral vision in his left eye, and thus terminated his right to participate in the Worker's Compensation Fund.[1]
Appellant's argument seems to be based on the commission's failure to correctly evaluate "loss of uncorrected vision" according to the American Medical Association Guides to the Evaluation of Permanent Impairment.
The initial hearing officer stated that "there is no case law, statute or rule that supports claimant's contention that a loss of visual field directly correlates to loss of vision, and the reviewing officer determined that appellant had failed to present precise evidence of his loss of uncorrected vision. However, our review of the AMA guidelines reveals that impairment of an individual eye is determined bycombining "loss of central vision" with "loss of visual field" and "loss of ocular motility." While the evidence is uncontroverted that appellant suffered a 40% loss of visual field to the left eye, there is no evidence that appellant has suffered loss to his "central vision" or ocular motility.
Although the "combined values chart" that governs single eye impairment does not contemplate cases like appellant's, where there is substantial loss of visual field but no other loss, the formula by which the chart is generated[2] indicates that appellant has suffered at least a 40% impairment in his left eye. Moreover, the Industrial Commission Medical Examination Manual has apparently incorporated the AMA guidelines as the basis for evaluating vision loss. It therefore appears to this Court that both hearing officers were incorrect.
However, we agree with appellee that the orders did not deny appellant the right to participate in the Worker's Compensation Fund, but rather incorrectly calculated the extent of appellant's disability. In Zavatasky v. Stringer (1978),56 Ohio St.2d 386, the Supreme Court held:
 A determination of "extent of disability" under R.C. 4123.519 presupposes that claimant has been allowed the "right to participate" in the Workers' Compensation Fund for injury to a specific part or parts of the body involving the loss or impairment of bodily functions. The decision of the Industrial Commission as to "extent of disability" constitutes a determination of the basis for the computation of the compensation or benefits payable under the provisions of the workers' compensation law for those losses or impairments of bodily functions allowed as compensable injuries.
Id. at paragraph two of the syllabus. Under the foregoing standard, the decision to deny appellant's motion for compensation for his visual loss clearly resulted from the hearing officer's misapplication of the appropriate guidelines. It was not a denial of appellant's right to participate in the system, but rather a determination that his visual field loss was not so severe as to be separately compensable. Appellant's argument that the hearing officer misapplied the AMA Guidelines is essentially a claim of abuse of discretion, which is properly brought by mandamus action. See, e.g., State ex rel.Kroger Co. v. Stover (1987), 31 Ohio St.3d 229, 232-33.
We therefore believe that the trial court correctly concluded that the administrative decision at issue in this case affected only the extent of appellant's participation in the worker's compensation system for his ocular injury, rather than his right to participate in the system. For the foregoing reasons, appellant's sole assignment of error is overruled and the judgment of the Common Pleas Court of Marion County is affirmed.
Judgment affirmed.
BRYANT, P.J., and HADLEY, J., concur.
[1] R.C. 4123.57(B) reads, in pertinent part:
 For the loss of the sight of an eye, one hundred
twenty-five weeks.
 For the permanent partial loss of sight of an eye, the portion of one hundred twenty-five weeks as the administrator in each case determines, based upon the percentage of vision actually lost as a result of the injury or occupational disease, but, in no case shall an award of compensation be made for less than twenty-five per cent loss of uncorrected vision. "Loss of uncorrected vision" means the percentage of vision actually lost as the result of the injury or occupational disease. (emphasis added).
[2] "The values are derived from the formula A + B(1-A)=combined
value of A and B, where A and B are the decimal equivalents of the impairment ratings." American Medical Association Guides to Evaluation of Permanent Impairment, at 322 (emphasis in original). See also id. at 217. This formula is used twice, first combining loss of visual field and loss of central vision, and then again to combine that resulting figure with loss of ocular motility. Id. at 217-8. Application of the formula in appellant's case leads to a result of 40% impairment in his left eye.
Appellee argues that R.C. 4123.57(B)'s referenced to "loss of uncorrected vision" correlates to visual system loss. Appellant's 40% left eye impairment only translates to a ten percent impairment for appellant's visual system, and appellee argues that this loss fails to meet the 25% threshold established by the statute. See American Medical Association Guides to Evaluation of Permanent Impairment, at 219, Table 7. However, we observe that in State ex rel. Kroger Co. v. Stover
(1987), 31 Ohio St.3d 229, the Ohio Supreme Court apparently accepted the view that the R.C. 4123.519 reference to "loss of uncorrected vision" means loss of vision in one eye rather than to the visual system. See id. at 230. Based on State ex rel.Kroger Co., we believe that appellant's 40% left eye loss is compensable under R.C. 4123.519(B).